IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JO ANNE DOMINEY,

     Plaintiff,

                                     Civil Action 2:16-cv-1004
                                     Chief Judge Edmund A. Sargus, Jr.
v.                                   Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Jo Anne Dominey ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 19), the Commissioner's Memorandum in Opposition (ECF No. 23), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

# I. BACKGROUND

Plaintiff protectively filed her application for Title II Social Security Benefits on November 17, 2006, alleging that she has been disabled since May 1, 2006, due to a brain tumor and arthritis. (ECF No. 12 at PAGEID# 289-96, 309). On March 19, 2013, following initial administrative denials of Plaintiff's applications, a hearing was held before Administrative Law Judge John Robert Montgomery (the "ALJ"). (*Id.* at PAGEID# 97-154).

Plaintiff, represented by counsel, appeared and testified at the hearing. Plaintiff testified that she lives 6 months out of the year in Australia with her husband, but still owns property in Columbus. (*Id.* at PAGEID# 102-03). She has a driver's license but tended to use public transportation. (*Id.* at PAGEID# 106). When asked why she could no longer work, Plaintiff testified that she was having problems with her back, left leg, and head; and she would get headaches and experience numbness and weakness. (*Id.* at PAGEID# 108). She reported that due to "being ill," she was irritable with customers. (*Id.*, at PAGEID# 109). She continued to work through 2007, directing the employees of her two flower shops over the telephone. (*Id.*). When asked why the earnings records reflect that she stopped paying into Social Security in 2004, Plaintiff noted she used a CPA who "took care of everything." (*Id.*).

When asked to describe a typical day, Plaintiff testified that she spent "most of the day in a Lazy Boy." (*Id.* at PAGEID# 114). She represented that her husband does the cooking, shopping and dishes. A "Chinese launderer" comes and gets their laundry, and a "cleaning lady" cleans their house. (*Id.* at PAGEID# 123). She reads and watches television and "mostly people come to see [her]." (*Id.* at PAGEID# 124). When she is with her husband, they dine out

three times per week. (*Id.* at PAGEID# 125). When Plaintiff is in Ohio by herself, she eats out on a daily basis. (*Id.* at PAGEID# 126).

Plaintiff has taken the medication Paxil for her depression and anxiety since 2006. (*Id.* at PAGEID# 119). When asked if the Paxil took care of her anxiety and depression, Plaintiff responded "Yes." (*Id.* at PAGEID# 119-20). Plaintiff testified that she no longer had problems with customers because she did not talk to them, she "just kind of stayed back." (*Id.* at PAGEID# 120).

Vocational Expert Jerry A. Olsheski, Ph.D., (the "VE") also testified at the administrative hearing. (*Id.* at PAGEID# 140-53). The VE classified Plaintiff's past relevant work as florist and retail manager, both light, skilled positions. (*Id.* at PAGEID# 141). The ALJ proposed a hypothetical regarding Plaintiff's residual functional capacity ("RFC")[1] to the VE. (*Id.* at PAGEID# at 141-44). Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff's clerical skills could transfer to other clerical positions within Plaintiff's RFC. The VE testified that Plaintiff's past relevant work as retail manager/florist was skilled and required the following skills: basic clerical, billing, answering phones, dealing with the public, and ordering supplies. (*Id.* at PAGEID# 147-48). The VE also testified that the hypothetical individual could perform approximately 9,800 sedentary, unskilled jobs in the regional economy such as a clerical receptionist, information clerk, or an order clerk. (*Id.* at PAGEID# 143).

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

3

With the added limitation of only occasional superficial contact with others, the above jobs would not be available, but Plaintiff could perform other sedentary unskilled positions, such as a production assembler, production inspector, or a hand-packer, with 2,000 jobs in the regional economy. (*Id.* at PAGEID# 144-45).

On April 3, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PAGEID# 78-91). The ALJ noted that Plaintiff met the insured status requirements through September 30, 2009. (*Id.* at PAGEID# 80). At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity during the period from her alleged onset date of May 1, 2006, through her date last insured of September 30, 2009. (*Id.*) The ALJ found that through the date last insured, Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine, rotator cuff tear, and history of left ankle tendon repair. The ALJ noted that

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

Plaintiff has also been evaluated for a cerebral tumor, but considered this a nonsevere impairment because it is asymptomatic. (*Id.* at PAGEID# 81). The ALJ determined that Plaintiff does not have any mental impairment or combination of impairments that individually or in combination significantly interferes with her ability to engage in basic mental work activities. (*Id.*). He further found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PAGEID #83). At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that through the date last insured, the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she could lift, carry, push, and pull 10 pounds frequently, and 15 pounds occasionally. She could sit for 45 minutes at one time for a total of 6 hours, and stand/walk for 30 minutes at one time for total of 4 hours in an eight hour workday. She could occasionally reach overhead and frequently reach in other directions. She was unlimited with regard to handling, fingering, and feeling[ ], pull/push other than the weight limitations. She was limited to occasional use of the left lower extremity for foot controls, but could frequently use right lower extremity. She could occasionally climb stairs, balance, stoop, kneel, and crouch. The [Plaintiff] was not able to climb ladders, ropes, or scaffolds.

(*Id.* at PAGEID# 83-84).

As to Plaintiff's alleged mental impairments, the ALJ assigned "only partial weight," to Scott Lewis Donaldson, Ph.D.'s consultative opinion "as it is inconsistent with the claimant's ability to manage her business from home from the time of her alleged onset date through the middle of 2007, as she testified at her disability hearing." (*Id.* at PAGEID# 81-82). The ALJ gave "little weight" to the opinions of state agency psychological consultants, Irma Johnson,

---

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Psy.D., and Joan Williams, Ph.D., explaining that their opinions were based on Dr. Donaldson's assessment. (*Id.* at PAGEID# 82). As to Dr. Stewart's opinion, the ALJ reasoned as follows:

> [Dr. Stewart] does not provide sufficient clinical and laboratory data to support her conclusion. She does not provide a detailed function-by-function analysis that demonstrates the inability to perform any type of gainful activity. There is no evidence that Dr. Stewart has any expertise or training in psychology that would enable her to diagnose and treat posttraumatic stress disorder or other mental illness. Last, her conclusion of an inability to sustain work addresses an area that is specifically reserved to the Commissioner under Social Security Ruling 96-5p. This report is not entitled to any significant weight and is therefore rejected.

(*Id.* at PAGEID# 88).

Relying on the VE's testimony, the ALJ concluded that Plaintiff has acquired work skills from past relevant work and can perform other jobs that exist in significant numbers in the national economy. (*Id.* at PAGEID# 89-90). He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at PAGEID# 91).

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

6

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III.    ANALYSIS

In her Statement of Errors, Plaintiff first challenges the ALJ's conclusion that she had no severe mental impairments at step two of his evaluation. Within this contention of error, Plaintiff contends that the ALJ erred in weighing the opinions of the psychological examiner, Scott Lewis Donaldson, Ph.D., and the state agency psychological consultants, Irma Johnson, Psy.D., and Joan Williams, Ph.D. (ECF No. 19 at PAGEID# 1002-06). Plaintiff next argues that the ALJ erred in failing to substantively analyze her intellectual impairment, namely, borderline intellectual functioning. (*Id.* at PAGEID# 1006-07). The undersigned considers these contentions of error in turn.

7

## A. The ALJ's Step Two Finding

The undersigned finds that the ALJ did not commit reversible error with respect to his step-two finding.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985).

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908). Thus, if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability analysis. *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental

impairment, the individual must be found not disabled at step 2 of the sequential evaluation process set out in 20 CFR 404.1520 and 416.920 . . . ."). Significantly, "[n]o symptom or combination of symptoms by itself can constitute a medically determinable impairment." SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996). "[S]ymptoms" consist of a claimant's description of his or her alleged impairment." 20 C.F.R. § 404.1528(a). In contrast, "signs" include "psychological abnormalities which can be observed." 20 C.F.R. § 404.1528(a)-(b). In addition, "[p]sychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.*, abnormalities of behavior, mood, thought, memory, orientation, development, or perception." 20 C.F.R. § 404.1528(a)-(b). "Laboratory findings" include "psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." *Id*. Consistently, the Sixth Circuit has advised that "[w]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (internal quotation marks and citations omitted). Plaintiff bears the burden of establishing the existence of a severe medically determinable impairment at step two. *Griffith*, 582 F. App'x at 559.

"When there is evidence of a mental impairment documented by 'medically acceptable clinical and laboratory diagnostic techniques,' 20 C.F.R. § 404.1508, the regulations require the ALJ to follow a 'special technique' to assess the severity of the impairment, 20 C.F.R. § 404.1520a." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013). The ALJ will rate the degree of a claimant's functional limitation in four broad areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."

9

20 C.F.R. § 404.1520a(c)(3). For the first three areas, the ALJ will rate the plaintiff on a five-point scale: "[n]one, mild, moderate, marked, and extreme." *Id*. § 404.1520a(c)(4). If the degree of the claimant's limitation in the first three functional areas is rated "as 'none' or 'mild' and 'none' in the fourth area," the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities. *Id*. § 404.1520a(d)(1).

Where, as here, the ALJ determines that a claimant had a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Finally, an ALJ's determination that a claimant has some mild impairment does not *require* inclusion of mental limitations into the RFC. *See, e.g.*, *Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *13-14 (S.D. Ohio Aug. 24, 2015) (no error where ALJ did not include RFC limitations to address findings of mild mental limitations); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *4-5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild

10

enough not to warrant specific RFC limitations); *see also* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . ."). An ALJ need only include limitations arising from an impairment, severe or non-severe, where the impairment affects a claimant's capacity to work. *See Griffeth v. Comm'r*, 217 F. App'x 425, 426 (6th Cir. 2007) ("The RFC describes the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities. A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." (internal quotation marks and citations omitted)).

In this case, as set forth above, the ALJ concluded that Plaintiff had severe impairments, but found that she does not have any severe mental impairments, reasoning as follows:

> [Plaintiff] does not have any mental impairment or combination of impairments that individually or in combination significantly interfere with [her] ability to engage in basic mental work activities. Thus [she] does not have a mental impairment that would be considered "severe" within the meaning of 20 CFR 404.1520(c) or 416.920(c), as applied by SSR 85-28, 1986 *Social Security Rulings* 19, 22. Under this ruling, an impairment is considered to be non-severe if the medical evidence establishes only "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." This is essentially the standard adopted by the Sixth Circuit in *Farris v. Secretary*, 773 F.2d. 85, 90-91 (6th Cir. 1985).

(ECF No. 12-2 at PAGEID# 81.) Within his step-two analysis, the ALJ rated the degree of Plaintiff's functional limitation as follows: "As demonstrated by the evidence summarized above, [Plaintiff] has only a mild restriction of activities of daily living, mild difficulties in

11

maintaining social functioning, mild difficulties in maintaining concentration, persistence of pace, and no repeated episodes of compensation." (*Id*. at PAGEID# 82.)

The undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff's impairment or combination of impairments do not significantly interfere with her basic mental work activities. As the ALJ pointed out, Plaintiff failed to allege disabling mental impairments in either the hearing testimony or to consulting examiner Dr. Donaldson. *Cf. Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 642 (6th Cir. 2013) (ALJ does not err by failing to consider impairments that claimant does not raise, even if record may contain evidence to support them). Moreover, when specifically asked about anxiety and depression at the hearing, Plaintiff indicated that she has taken the same dosage of medication since 2006 and that this medication has "been taking care of it." (*Id.* at PAGEID# 119-20.) The ALJ also considered the report and opinions of consultative examiner Dr. Donaldson, in which Plaintiff reported the following: she had never been admitted to a psychiatric facility or participated in counseling; she gets along adequately with neighbors, clerks in stores, people in public agencies; her interfamilial relationships are adequate; and she cooks, cleans, does laundry, reads the newspaper, works crossword puzzles, watches television, travels, draws, crochets, plays cards, and leaves home daily.

The ALJ also noted Dr. Donaldson's clinical observations, diagnoses, and opinions concerning Plaintiff's degree of limitation, which reflected only mild limitations. The ALJ accorded only "partial weight" to Dr. Donaldson's opinion that Plaintiff had some mild limitations, explaining that any such limitation "is inconsistent with [Plaintiff's] ability to manage her business from home from the time of her alleged onset date through the middle of

2007, as she testified during the hearing." (*Id.* at PAGEID# 82.) As the ALJ points out, although Plaintiff reported to Dr. Donaldson that she stopped working in May 2006 (ECF No. 12-7 at PAGEID# 530), she testified under oath that she continued to draw a salary and manage/supervise her employees from home until the end of 2007, (ECF No. 12-2 at PAGEID# 108-110). The ALJ likewise considered and discounted the state-agency opinions because those opinions were based exclusively on Dr. Donaldson's opinion.

Plaintiff's specific challenges to the ALJ's step two finding lack merit. Plaintiff first points out that she reported to Dr. Donaldson that she suffered "protracted sleep difficulties," occasional crying, insomnia, fatigue, a decline in energy, restlessness, and muscle tension. Yet Plaintiff fails to show that these alleged symptoms are attributable to a mental impairment rather than to her physical impairment. Moreover, Dr. Donaldson specifically noted that "Plaintiff does not suffer from mood swings or depressive symptoms." (ECF No. 12-7 at PAGEID# 531.) Regardless and most significantly, Plaintiff fails to show that these alleged symptoms posed more than a minimal limitation on her ability to work.

Plaintiff next cites to her hearing testimony where she stated that "[b]eing ill made [her] irritable with the customers, so [she] couldn't wait on customers anymore." (Pl.'s Statement of Errors 14, ECF No. 19 (quoting ECF No. 12-2 at PAGEID# 109).) But read within context, Plaintiff was stating that it was her physical impairments that made her irritable. In addition, as discussed above, notwithstanding this testimony, Plaintiff continued to supervise employees for approximately a year-and-a-half after she said that she could not wait on customers due to her irritability. Moreover, this testimony contradicts her statement to Dr. Donaldson that her interactions with her family and the public were adequate. Finally, the ALJ found Plaintiff's

13

allegations to be not credible, a determination that Plaintiff has not challenged.

Plaintiff next challenges the ALJ's assessment of Dr. Donaldson's opinion, positing that the ALJ erroneously relied on only Dr. Donaldson's normal findings and neglected to consider the abnormalities Dr. Donaldson observed. This challenge fails because there is no authority requiring an ALJ to explicitly mention all of the findings and observations contained within a medical source's report. Regardless, review of the ALJ's decision shows this to be an incorrect statement as the ALJ acknowledged that Dr. Donaldson's testing results placed Plaintiff in the range of borderline intellectual functioning and that Dr. Donaldson observed that Plaintiff appeared to be anxious and withdrawn, but cooperated and relaxed as the evaluation proceeded. (ECF No. 12-2 at PAGEID# 81.) None of the other observed abnormalities that Plaintiff identifies satisfies her burden to show that she has a mental impairment that limits her mental ability to do basic work activities. Indeed, as the ALJ pointed out, Plaintiff *continued* work and supervise employees after the date of her examination with Dr. Donaldson, a fact that she neglected to share with Dr. Donaldson. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (ALJ reasonably discounts medical source's opinion where it contradicts with the claimant's own testimony). In sum, the undersigned concludes that the ALJ reasonably discounted Dr. Donaldson's opinion.

The ALJ likewise reasonably discounted the state-agency reviewing consultant's opinion as premised upon Dr. Donaldson's opinion. Like Dr. Donaldson, the state-agency consultant's did not have the benefit of Plaintiff's testimony reflecting that she continued to work or that the medication she had been prescribed took care of her anxiety and depression. *See id*.

Finally, Plaintiff points out that her primary care physician had diagnosed her with depression and that Dr. Donaldson diagnosed her with adjustment disorder. Neither of these diagnoses, however, requires the conclusion that Plaintiff had a *severe* mental impairment. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [the condition] . . . says nothing about the severity of the condition." (citation omitted)); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929-30 (6th Cir. 2007) ("The mere existence of . . . impairments . . . does not establish that [the plaintiff] was significantly limited from performing basic work activities for a continuous period of time.").

In sum, the undersigned finds that for all of the reasons set forth above, substantial evidence supports the ALJ's determination that Plaintiff had only mild limitation attributable to her mental impairments and that she had not demonstrated that her mental impairments caused more than a minimal limitation on her ability to do basic work activities. The ALJ therefore did not err at his step-two finding. Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.    The ALJ's Consideration of Plaintiff's Diagnosis of Borderline Intellectual Functioning**

Plaintiff's second contention of error, that the ALJ erred in failing to substantively analyze her borderline intellectual functioning, likewise lacks merit.

According to Plaintiff, the ALJ "only addressed [Plaintiff's borderline intellectual functioning] by noting that Dr. Donaldson had not given any diagnosis based on the IQ testing." (Pl.'s Statement of Errors 17, ECF No. 19.) Plaintiff further submits that contrary to the ALJ's statement, Dr. Donaldson *did* diagnose borderline intellectual functioning. She maintains that

15

reversal is warranted so that the ALJ can consider the severity of and the degree to which any functional limitations result from her borderline intellectual functioning.

These arguments fail to persuade for a number of reasons. To begin, contrary to Plaintiff's assertion that the ALJ only noted that Dr. Donaldson had not given any diagnosis based upon the testing, the ALJ stated as follows:

> [Plaintiff's] scores on the Wechsler Adult Intellectual Scale – Third Edition (WAIS-III) were 79 in Verbal Intelligence, 78 in Performance Intelligence, and 77 in Full Scale Intelligence, placing her in the range of borderline intellectual functioning. Scores on the Wechsler memory scale did not indicate a deficit. She appeared to understand the test instructions but was distracted during the testing process. The psychologist declined to give any diagnosis based upon this testing.

(ECF No. 12-2 at PAGEID# 81.) Further, Dr. Donaldson noted in his "Summary and Conclusions" that he assigned borderline intellectual functioning to Axis II, and then specifically stated under the "Diagnoses" section that the "Axis II" diagnosis was "deferred." It appears that this deferral was premised upon Dr. Donaldson's notation that Plaintiff "was distracted during the testing process" and/or that other "diagnoses need to be ruled-out." (ECF No. 12-7 at PAGEID# 532-533.) Thus, the ALJ did not err in noting that Dr. Donaldson had declined, at that juncture, to diagnose borderline intellectual functioning.

Regardless, any such error would be harmless because the ALJ did, in fact, consider the degrees of Plaintiff's functional limitation and whether her impairments interfered with her ability to engage in basic mental work activities. (*See* ECF No. 12-2 at PAGEID 81-82 (finding only a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence of pace, and no repeated episodes of compensation and concluding that Plaintiff's mental impairments or combination of

16

impairments do not interfere with her ability to engage in basic mental activities).) As set forth above, if, as here, the degree of a claimant's limitation in the first three functional areas is rated "as 'none' or 'mild' and 'none' in the fourth area," the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). Plaintiff has failed to adduce any such evidence. Indeed, she did not even raise borderline functioning as a basis for her disability during the hearing or in her application. The VE testimony reflects that Plaintiff's past work managing two florist shops is classified as skilled work with an SVP level of 6. (ECF No. 12-2 at PAGEID# 141.) Plaintiff testified that she continued to perform supervisory/managerial duties from home for approximately 1.5 years after her alleged disability onset. Nothing in the record reflects that Plaintiff suffered some type of brain injury after her alleged onset that gave rise to her borderline intellectual functioning diagnosis such that she could no longer perform those skills the ALJ found to be transferrable.

In sum, because the ALJ did not err in his consideration of Plaintiff's alleged borderline intellectual functioning, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

### IV. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE